IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 02–cv–01736–EWN–MJW


ROBERT STONE,

      Plaintiff,

v.

DEPARTMENT OF AVIATION,
DENVER INTERNATIONAL AIRPORT and
THE CITY AND COUNTY OF DENVER, a Municipal Corporation,

      Defendants.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is an employment discrimination case.  Plaintiff Robert Stone alleges that Defendants Department of Aviation, Denver International Airport, and the City and County of Denver (collectively, "Defendants") violated the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. § 12101, *et seq.* (West 2007) by failing to transfer him into a different work position and by terminating his employment.  This matter is before the court on "Plaintiff's Renewed Motion for Partial Summary Judgment" and "Defendants' Brief in Support of Motion for Summary Judgment," both filed October 11, 2006.  Jurisdiction is premised upon the existence of a federal question, pursuant to 28 U.S.C.A. § 1331 (West 2007).

**FACTS**

*1.      Factual Background*

On September 1, 1995, Plaintiff began working for Defendants as a heavy equipment service technician ("HEST").  (Br. in Supp. of Pl.'s Renewed Mot. for Partial Summ. J., Statement of Undisputed Material Facts ¶¶ 1–2 [filed Oct. 11, 2006] [hereinafter "Pl.'s Br."]; *admitted at* Defs.' Resp. to Pl.'s Renewed Mot. for Partial Summ. J., Resp. to Statement of Undisputed Material Facts ¶¶ 1–2 [filed Nov. 3, 2006] [hereinafter "Defs.' Resp."].)  The HEST position required Plaintiff to maintain a commercial driver's license ("CDL") in order to test-drive heavy equipment.  (*Id.*, Statement of Undisputed Material Facts ¶ 2; *admitted at* Defs.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 2.)  On October 13, 1997, Plaintiff lost his CDL due to his high blood pressure, and was, at all times relevant to this case, unable to renew the CDL.  (*Id.*, Statement of Undisputed Material Facts ¶ 3; *admitted at* Defs.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 3; *see also* Defs.' Br. in Supp. of Mot. for Summ. J., Statement of Undisputed Material Facts ¶¶ 9–10 [filed Oct. 11, 2006] [hereinafter "Defs.' Br."]; *admitted at* Pl.'s Resp. to Defs.' Renewed Mot. for Summ. J., Resp. to Statement of Undisputed Facts ¶¶ 9–10 [filed Nov. 3, 2006] [hereinafter "Pl.'s Resp."].)  From 1998 through 2000, although Plaintiff remained classified as a HEST, he either worked in positions that did not require a CDL or did not work.  (Pl.'s Br., Statement of Undisputed Material Facts ¶ 4; *admitted at* Defs.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 4.)

In February 1998, healthcare professionals at Defendants' Occupational Health and Safety Clinic ("OHSC") examined Plaintiff and issued him a return-to-work pass imposing certain

physical restrictions.  (*Id.*, Statement of Undisputed Material Facts ¶ 5; *admitted at* Defs.' Resp.,

Resp. to Statement of Undisputed Material Facts ¶ 5.)  Defendants transferred Plaintiff, and from

May 1998 to July 1999, Plaintiff worked as a member of Defendants' bridge crew, a job that did

not require a CDL.  (*Id.*, Statement of Undisputed Material Facts ¶ 6; *admitted at* Defs.' Resp.,

Resp. to Statement of Undisputed Material Facts ¶ 6.)

On October 14, 1999, the OHSC issued Plaintiff another return-to-work pass,

propounding the same physical limitations as those contained in the February 1998 pass.  (*Id.*,

Statement of Undisputed Material Facts ¶ 7; *admitted at* Defs.' Resp., Resp. to Statement of

Undisputed Material Facts ¶ 7.)  On January 3, 2000, Plaintiff's physician authored a letter stating

that Plaintiff's February 1998 work restrictions should remain in place until March 19, 2000, at

which time he could work without any restrictions.  (Defs.' Br., Statement of Undisputed Material

Facts ¶ 21; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 21.)

On June 13, 2000, Defendants sent Plaintiff a notice of contemplation of disqualification

concerning his HEST position and scheduled a meeting regarding same.  (Pl.'s Br., Statement of

Undisputed Material Facts ¶ 8; *admitted at* Defs.' Resp., Resp. to Statement of Undisputed

Material Facts ¶ 8.)  During the meeting, which took place on June 19, 2000, Defendants

requested that Plaintiff undergo a medical examination.  (*Id.*, Statement of Undisputed Material

Facts ¶ 9; *admitted at* Defs.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 9.)  On

June 26, 2000, Plaintiff underwent the examination, after which the OHSC issued Plaintiff a full-

duty return-to-work pass with no physical restrictions.  (*Id.*, Statement of Undisputed Material

Facts ¶ 10; *admitted at* Defs.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 10.)

Around the time of the June 19, 2000 meeting, Dan Brown, Defendants' director of airport maintenance, researched and obtained a list of other jobs that the Denver Career Service Authority ("CSA") believed Plaintiff could perform.[1]  (Defs.' Br., Statement of Undisputed Material Facts ¶¶ 31, 37; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 31, 37.)  Among the positions on the aforementioned list was a job as a material and parts technician ("MPT"), which did not require a CDL.  (*Id.*, Statement of Undisputed Material Facts ¶ 37; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 37.)

In July 2000, Plaintiff discussed with Mr. Brown the possibility of transferral to an MPT position.  (Pl.'s Br., Statement of Undisputed Material Facts ¶ 11; *admitted at* Defs.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 11.)  At the behest of Mr. Brown, Jim Thomas, Defendants' human resources manager spoke to John Noe, Defendants' manager of technical services — the department with which the MPT position was affiliated — about Plaintiff's potential reassignment and transfer.  (Defs.' Br., Statement of Undisputed Facts ¶¶ 44–45, 48; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶¶ 44–45, 48.)

---

[1]Most municipal employees in Denver are hired, promoted, disciplined, and fired in accordance with the Career Service system. *Neil v. City & County of Denver*, Civil Action No. 05–cv–00132–RPM 2007 U.S. Dist. LEXIS 11610, *1–3 (D. Colo. Feb. 20, 2007).  The CSA is the central human resources agency for employees in the system.  *Id.*  The Career Service Board personnel rules provide protection to Career Service employees, including terms and conditions for termination, protection from discrimination, and procedures for reporting, investigating, and remedying violations.  *Id.*  An employee claiming a violation may seek a hearing before a Career Service hearing officer, and may appeal to the Career Service Board.  *Id.*  The Career Service Board decision is subject to limited judicial review under Colorado Rule of Civil Procedure 106. *Id.*

In October 2000, Defendants stopped processing Plaintiff's transfer to the MPT position. (Pl.'s Br., Statement of Undisputed Material Facts ¶ 12; *admitted at* Defs.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 12.)  In November 2000, Defendants notified Plaintiff that he would have to obtain a CDL in order to maintain his position as a HEST.  (*Id.*)  On December 18, 2000, Defendants issued Plaintiff a contemplation of disqualification letter, citing Plaintiff's inability to maintain a CDL.  (*Id.*, Statement of Undisputed Material Facts ¶ 13; *admitted at* Defs.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 13.)  On January 14, 2001, Plaintiff was disqualified from work as a HEST and terminated.  (*Id.*, Statement of Undisputed Material Facts ¶ 14; *admitted at* Defs.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 14.)

## 2.     *Procedural History*

### a.        *Prior Proceedings*

On January 19, 2001, Plaintiff filed an appeal with the CSA (the "CSA Proceedings") concerning Defendants' failure to hire him in the MPT position and termination of his employment.  (*Id.*, Statement of Undisputed Material Facts ¶ 14; *admitted at* Defs.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 14.)  On March 26, 2001, a CSA hearing officer heard Plaintiff's appeal.  (*Id.*)  The hearing officer found that Defendants regarded Plaintiff as disabled because Plaintiff was perceived to be unable to "perform[] the major life activity of working in a simple stock room position."  (*Id.*, Ex. 2 [Career Service Board Findings].)  The hearing officer determined that Defendants wrongly refused to hire Plaintiff for the MPT position based on his disability, but found no discriminatory motives behind their decision to terminate his

employment.  (*Id.*, Statement of Undisputed Material Facts ¶ 25; *admitted at* Defs.' Resp., Resp.

to Statement of Undisputed Material Facts ¶ 25.)  The hearing officer: (1) reversed Defendants'

decision to terminate Plaintiff; (2) reinstated Plaintiff as an employee; (3) ordered Defendants to

complete Plaintiff's application for transfer to the MPT position or a suitable alternative; and (4)

awarded Plaintiff back pay and benefits.  (*Id.*, Statement of Undisputed Material Facts ¶ 26;

*admitted at* Defs.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 26.)  On June 28,

2001, the Career Service Board affirmed the hearing officer's decision.  (*Id.*, Statement of

Undisputed Material Facts ¶ 27; *admitted at* Defs.' Resp., Resp. to Statement of Undisputed

Material Facts ¶ 27.)

On July 27, 2001, Defendants appealed the decision in the CSA Proceedings to the

Denver District Court pursuant to Colorado Rule of Civil Procedure 106(a)(4).  (*Id.*, Statement of

Undisputed Material Facts ¶ 28; *admitted at* Defs.' Resp., Resp. to Statement of Undisputed

Material Facts ¶ 28.)  On September 17, 2001, Plaintiff answered Defendants' appeal.  (*See* Order

and Mem. of Decision at 3 [filed Dec. 19, 2003] [hereinafter "Order"].)  Plaintiff did not file an

ADA counterclaim against Defendants in the state court proceedings.  (*Id.*)  On February 27,

2003, the state court affirmed the hearing officer's findings.  (*Id.*)  The court found that although

the hearing officer did not "expressly articulate one aspect of the applicable legal standard" — to

wit, whether Plaintiff was "substantially limited in performing a <u>class</u> of jobs or a <u>broad range</u> of

jobs in multiple classes" — the officer sufficiently demonstrated her grasp of the law in her

discussion of the overall issue whether Plaintiff was regarded as disabled.  (Pl.'s Br., Ex. 4 at 3–4

[D. Colo. State Order] [emphasis in original].)

On April 14, 2003, Defendants appealed the district court's decision to the Colorado Court of Appeals.  (Order at 4.)  On July 29, 2004, the appellate court affirmed the decision. (Pl.'s Br., Statement of Undisputed Material Facts ¶ 30; *admitted at* Defs.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 30.)  Relying upon cases construing the ADA because the Career Service Board rules concerning disability "were promulgated to mirror federal ADA standards," the court found that the CSA hearing officer's findings "were supported by the [record] evidence."  (*Id.*, Ex. 6 at 8, 14–15 [Colo. Ct. App. Order].)  The court reasoned that Defendants' failure to approach Plaintiff about performing work as an automotive service technician "support[ed] the conclusion that [Defendants] regarded [Plaintiff] as unable to perform more than one particular job."  (*Id.*)

> **b.    *Proceedings in the Instant Case***

On August 27, 2001, shortly before filing his answer to Defendants' state court complaint, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendants violated the ADA.  (*Id.*, Statement of Undisputed Material Facts ¶ 31; *admitted at* Defs.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 31.)  On June 12, 2002, the EEOC issued a right-to-sue letter to Plaintiff.  (*Id.*, Statement of Undisputed Material Facts ¶ 32; *admitted at* Defs.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 32.)

On September 10, 2002, Plaintiff filed a complaint in this court, alleging that Defendants violated the ADA by failing to transfer him and terminating his employment.  (Compl. and Jury Demand [filed Sept. 10, 2002] [hereinafter "Compl."].)  On May 12, 2003, Plaintiff filed a motion

for partial summary judgment in this action. (Pl.'s Mot. for Partial Summ. J. [filed May 12,

2003].) Plaintiff argued that the doctrines of *res judicata* and collateral estoppel apply to the

CSA Proceedings and the state court affirmations of those findings and, therefore, he was entitled

as a matter of law to a judgment that Defendants violated the ADA. (*Id.*) Also on May 12, 2003,

Defendants filed a motion for summary judgment. (Defs.' Mot. for Summ. J. [filed May 12,

2003].) Defendants argued that: (1) they did not violate the ADA; and (2) independent of their

actions, the doctrines of *res judicata* and collateral estoppel defeated this court's subject matter

jurisdiction of the case, because Plaintiff failed to bring an ADA counterclaim against Defendants

in the state district court action. (*Id.*)

On December 19, 2003, this court granted Defendants' motion and denied Plaintiff's

motion. (Order.) The court reasoned that *res judicata* barred Plaintiff's claims because he had

failed to file an ADA counterclaim — which this court deemed to be a compulsory

counterclaim — in the state court action. (*Id.*) Further, the court found that the pending-appeal

exception to *res judicata* did not apply in this case because the state court appeal under Colorado

Rule of Civil Procedure 106 did not contemplate *de novo* review. (*Id.*) Plaintiff promptly

appealed this court's decision. (Notice of Appeal [filed Jan. 16, 2004].)

On July 6, 2006, the United States Court of Appeals for the Tenth Circuit found that

Plaintiff's ADA claim was not a compulsory counterclaim under Colorado law, because at the

time he filed his answer in the state court action, he had not yet received his right-to-sue letter

from the EEOC. (Mandate, Ex. 1 [July 6, 2006 Judgment] [filed July 28, 2006].) Therefore, the

appellate court found that Plaintiff's failure to assert his ADA claim in the state court action did

not preclude him from pursuing said claim in federal court and remanded the case for further

proceedings.  (*Id.*)  On August 16, 2006, this court held a status conference and set new deadlines

for filing dispositive motions.  (Courtroom Mins. [filed Aug. 16, 2006].)

On October 11, 2006, Plaintiff filed a renewed motion for partial summary judgment.

(Pl.'s Renewed Mot. for Partial Summ. J. [filed Oct. 11, 2006].)  Therein, Plaintiff again argues

that Defendants' liability under the ADA is established through application of collateral estoppel

principles to the CSA Proceedings.  (*Id.*)  On November 3, 2006, Defendants responded to

Plaintiff's motion.  (Defs.' Resp.)  On November 20, 2006, Plaintiff filed a reply in support of his

motion.  (Pl.'s Reply Br. in Supp. of Renewed Mot. for Partial Summ. J. [filed Nov. 20, 2006]

[hereinafter "Pl.'s Reply"].)

Also on October 11, 2006, Defendants filed a motion for summary judgment.  (Defs.' Br.)

Defendants argue Plaintiff cannot establish the *prima facie* case requisite to bring an ADA claim.

(*Id.*)  On November 3, 2006, Plaintiff responded to Defendants' motion.  (Pl.'s Resp.)  On

November 20, 2006, Defendants filed a reply in support of their motion.  (Defs.' Reply in Supp.

of Summ. J. [filed Nov. 20, 2006] [hereinafter "Defs.' Reply"].)

## ANALYSIS

### 1.   *Legal Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant

summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)

(2007); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2007). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

**2.      *Evaluation of Claims***

Plaintiff argues that collateral estoppel applies to this case and the outcome in the CSA Proceedings conclusively establishes Defendants' liability under the ADA. (Pl.'s Br. at 9–13.) On the other hand, Defendants argue that collateral estoppel does not apply in this case or, if it does, it does not serve to establish their liability under the ADA. (Defs.' Resp. at 4–8.) Defendants

-10-

also argue that, as a matter of law, Plaintiff cannot meet his burden to establish a *prima facie* case

under the ADA.  (Defs.' Br. at 10–17.)  The court addresses the parties' arguments in turn.

### a.       *Collateral Estoppel*

First, Plaintiff ardently argues that the decision in the CSA Proceedings estops Defendants

from denying they violated the ADA.  (Pl.'s Br.)  As this court has previously noted, collateral

estoppel is an oft-misconstrued concept of law.  *See Stone v. Dep't of Aviation*, 296 F. Supp. 2d

1243, 1248 (D. Colo. 2003) (collecting cases where courts confused collateral estoppel and *res*

*judicata*).  As a matter of course, "[t]he doctrines of *res judicata*, or claim preclusion, and

collateral estoppel, or issue preclusion, are closely related."  *Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d

1507, 1520 (10th Cir. 1990).  Generally, when a final judgment on the merits has been obtained in

a litigation, *res judicata* precludes parties or their privies from relitigating the issues that were

decided or issues that could have been raised in a prior action.  *Allen v. McCurry*, 449 U.S. 90, 94

(1980).  *Res judicata* applies only when the prior action involved the same parties or their privies

and identical claims.  *Satsky v. Paramount Commc'ns, Inc.*, 7 F.3d 1464, 1467 (10th Cir. 1993).

In contrast, collateral estoppel provides that "determination of [] issues by a valid final judgment

to which such determination was essential" precludes subsequent relitigation of the issues in a

subsequent action.  *Sil-Flo, Inc.*, 917 F.2d at 1520.  Accordingly, it has been said that "[c]ollateral

estoppel is broader than *res judicata* since it applies to claims for relief different from those

litigated in the first action, but narrower in that it only applies to issues actually litigated."  *City &*

*County of Denver v. Block 173 Assocs.*, 814 P.2d 824, 831 (Colo. 1991).  Another significant

difference is that collateral estoppel, unlike *res judicata*, can be used offensively, as Plaintiff here

-11-

attempts to do.  *See, e.g.*, *Antelope Co. v. Mobil Rocky Mountain, Inc.*, 51 P.3d 995, 1003 (Colo. Ct. App. 2001).

Importantly, the fact that this case involves an administrative decision does not, in and of itself, defeat the applicability of collateral estoppel.  The Supreme Court has held that "giving preclusive effect to administrative fact-finding serves the value underlying general principles of collateral estoppel" and serves "both the parties' interest in avoiding the cost and vexation of repetitive litigation and the public's interest in conserving judicial resources."  *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 798 (1986).  Accordingly, the law is well-settled that "[w]here an administrative forum has the essential procedural characteristics of a court," and "resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," its determinations "should be accorded the same finality that is accorded the judgment of a court."  *Id.* at 798–99 (citations omitted); *see also Bolling v. Denver*, 790 F.2d 67, 68 (10th Cir. 1986) (giving preclusive effect to a state court judgment that reviewed an administrative determination); *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84–85 (Colo. 1999) (holding that collateral estoppel may bind parties to an administrative agency's findings and conclusions, so long as certain conditions are satisfied).

In Colorado, collateral estoppel bars relitigation of an issue if:

(1) [t]he issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) [t]he  party against whom estoppel [is] sought was a party to or was in privity with a party to the prior proceeding; (3) [t]here was a final judgment on the merits in the prior proceeding; [and] (4) [t]he party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

-12-

*Bebo Constr.*, 990 P.2d at 84–85 (citation omitted).  The party seeking preclusion bears the burden of establishing these elements.  *Id.* at 85.

As to the first element, Plaintiff argues that identity of issues between the CSA Proceedings and the instant case exists because the Career Service Board rules prohibiting disability "mirror ADA standards" and the CSA hearing officer's "thorough exposition of the facts and legal issues and the legal identity of those issues with the ADA claim in the [current] action conclusively establishes [sic] the first element of collateral estoppel."  (Pl.'s Br. at 12.) Specifically, Plaintiff highlights Defendants' arguments in their 2003 motion for summary judgment and asserts that in both the CSA Proceedings and the matter currently before this court, "the issue of whether Plaintiff here is regarded as disabled is crucial and . . . sets the parameters for any relief to which Plaintiff may be entitled. . . .  Similarly, the subject matter is the conduct of Defendant[s] and whether it was sufficient to regard Plaintiff as disabled."  (*Id.* at 11.)  In light of the foregoing, the court finds that Plaintiff has satisfied the first element with regard to the issue of whether he was regarded as disabled.  The remaining elements are easily satisfied.  It is beyond dispute that there is an identity of parties between the instant case and the CSA Proceedings.  (*See* Compl.; Pl.'s Br., Ex. 2 [Career Service Board Findings].)  Final judgment on the matter exists in the form of the order by the Colorado Court of Appeals affirming the outcome in the CSA Proceedings.  (Pl.'s Br., Ex. 6 [Colo. Ct. App. Order].)  Finally, Plaintiff asserts, and Defendants do not deny, that all parties had "full and fair opportunity to litigate the issues" in the CSA Proceedings.  (*Id.* at 11; *see* Defs.' Resp.)  Based on the foregoing, the court finds that application of collateral estoppel is appropriate in the instant case.  Nevertheless, contrary to

Plaintiff's arguments, such application does not serve to establish Defendants' liability under the ADA.

### b.    Plaintiff's ADA Claims

In his complaint, Plaintiff alleges that Defendants violated the ADA when they discriminated against him on the basis of a perceived disability by refusing to accept his transfer into a position as an MPT and terminating his employment.  (Compl. ¶¶ 42–43.)  Plaintiff may establish Defendants' alleged ADA violation either directly, by presenting sufficient evidence that disability was a determining factor in Defendants' employment decisions involving Plaintiff, or indirectly, through the framework of shifting evidentiary burdens outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003); *Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).  Here, Plaintiff has proffered no direct evidence of Defendants' discrimination, and therefore must follow the *McDonnell Douglas* framework.  (*See* Pl.'s Br.; Pl.'s Resp.)  As a threshold matter under *McDonnell Douglas*, Plaintiff must establish a *prima facie* case of discrimination.  *McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 922 (10th Cir. 2001).  The "burden of establishing a *prima facie* case" is "not onerous."  *Id.* (citation and internal quotation marks omitted).  "Establishment of a *prima facie* case creates a presumption of unlawful discrimination."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981).  If Plaintiff establishes a *prima facie* case, the burden of production then shifts to Defendants to "articulate a legitimate, nondiscriminatory reason for the adverse employment action."  *Wells v. Colo. Dept. of Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003) (citing *McDonnell Douglas*, 411

-14-

U.S. at 792).  If Defendants articulate a proper basis for their actions, the burden shifts back to Plaintiff to demonstrate that the reason Defendants advanced is a pretext for discrimination. *Burdine*, 450 U.S. at 255–56.

<strong><em>i.      Prima Facie Case</em></strong>

In a disability discrimination case, a court's inquiry focuses on whether an employer impermissibly discriminated against a qualified disabled employee "'in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, [or] other terms, conditions, and privileges of employment'" because of the employee's disability.  *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1128 (10th Cir. 2003) (quoting 42 U.S.C. § 12112).  To establish a *prima facie* case for disability discrimination, a plaintiff must show: "(1) that plaintiff belongs to a protected class; (2) that he suffered an adverse employment action; and (3) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination."  *Hysten v. Burlington N. & Santa Fe R.R.*, 296 F.3d 1177, 1181 (10th Cir. 2002).

Defendants argue that Plaintiff cannot establish a *prima facie* case for disability discrimination because he cannot satisfy the first prong.  (Defs.' Br. at 10–15.)  More specifically, Defendants argue that Plaintiff cannot demonstrate that he is entitled to protection under the ADA because he cannot raise a genuine question of fact that he has a disability.  (*Id.*)  Under ADA standards, a disability is defined as: "'(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'"  *Bd. of Trs. of the Univ. of Ala. v. Garrett,*

-15-

531 U.S. 356, 361 (2001) (quoting 42 U.S.C. § 12102[2]).  Here, Plaintiff alleges that Defendants

regarded him and recorded him as disabled.  (Compl. ¶¶ 46–47.)  In turning to the analysis of

these definitions, the court finds that collateral estoppel principles apply only to the former.[2]

### *(1)*      *Regarded as Disabled*

In order to establish that Defendants perceived Plaintiff as disabled within the meaning of

the ADA, Plaintiff must demonstrate either: (1) Defendants mistakenly believed that Plaintiff had

a physical impairment that substantially limited one or more major life activities, or (2) Defendants

mistakenly believed that Plaintiff's actual, non-limiting impairment substantially limited one or

more major life activities.  *Sutton v. United Air Lines*, 527 U.S. 471, 489–90 (1999); *accord*

*McGeshick v. Principi*, 357 F.3d 1146, 1151 (10th Cir. 2004).  In short, Plaintiff must establish

that Defendants entertained misconceptions about Plaintiff's abilities — either as to whether

Plaintiff had an impairment, or as to the limiting nature of an impairment Plaintiff had.  *Sutton*,

527 U.S. at 489–90.  Plaintiff must also establish that Defendants' misconceptions were "based on

myth, fear, or stereotype, including concerns regarding safety, insurance, liability, and acceptance

by coworkers and the public."  *McKenzie v. Dovala*, 242 F3d 967, 971 (10th Cir. 2001) (citation

and internal quotation marks omitted).  Here, Plaintiff argues that the CSA hearing officer's

determination that he was regarded as disabled within the meaning of the Career Service Board's

---

[2]As Plaintiff himself notes, collateral estoppel ought apply in this case because "the issue
of whether Plaintiff here is regarded as disabled is crucial and . . . sets the parameters for any relief
to which Plaintiff may be entitled."  (Pl.'s Br. at 11.)  Indeed, Plaintiff makes no collateral
estoppel arguments in connection with his "recorded as disabled" arguments.  (Pl.'s Resp. at
14–15.)

rules estops Defendants from denying liability for same within the meaning of the ADA. (Pl.'s Br. at 9–14.) The court disagrees.

The insurmountable flaw in Plaintiff's argument arises out of the CSA hearing officer's finding that Defendants regarded Plaintiff as disabled because they believed he could not "perform[] the major life activity of working in a simple stock room position." (*Id.*, Ex. 2 [Career Service Board Findings].) As described above, principles of collateral estoppel bind this court to accept this conclusion. (*See Analysis* § 2a, *supra*.) Regardless, jurisprudence on work as a major life activity renders the hearing officer's findings insufficient to satisfy the ADA definition of disability. To clarify, courts have been hesitant to define working as a major life activity. The Supreme Court has held that "even assuming working is a major life activity, a claimant would be required to show an inability to work in a 'broad range of jobs,' rather than a specific job." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 200 (2002) (citing *Sutton*, 527 U.S. at 492.) In this case, the hearing officer's determination that Defendants perceived Plaintiff to be incapable of working in a stock room position clearly cannot satisfy binding precedent of what defines a perception of disability. Defendants rightly argue as much in their motion for summary judgment. (Defs.' Br. at 11.)

Perhaps recognizing the shortcomings of applying collateral estoppel in the instant case, Plaintiff asserts that it is error to categorize "the MPT [as] a single, particular job" and instead defines the position as "a simple stockroom job typical of a broad range of jobs." (Pl.'s Resp. at 11.) Plaintiff then emphasizes that the MPT position with Defendants had the same physical strength requirements as any municipal MPT position in Denver. (Pl.'s Br. at 11; *see also id.*,

-17-

Statement of Disputed Facts ¶ 9; *admitted at* Defs.' Reply, Resp. Concerning Disputed Facts ¶ 9.)

Plaintiff's purported *coup de grace* is that one might reasonably infer "[Mr.] Noe viewed Plaintiff

as being substantially limited in performing either a class of jobs, or a broad range of jobs," based

on: (1) the similarity between Defendants' MPT position and other MPT positions citywide; and

(2) fact that Mr. Brown referred to the MPT position by the generic term "parts room handler."

(*Id.* at 11.)  The court is unimpressed.

　　　In making this argument, Plaintiff does not refer to Mr. Noe's own statements or to any

other record evidence, but instead relies on his own conclusory speculations.  (*Id.*)  Unfortunately

for Plaintiff, speculation cannot satisfy his burden at the summary judgment stage.  *See Self v.*

*Peter Crum, M.D.*, 439 F.3d 1227, 1230 (10th Cir. 2006) (noting mere speculation, conjecture, or

surmise cannot defeat summary judgment).  Moreover, without citation to supportive record

evidence, Plaintiff's assertions are merely conclusory, and thus cannot serve to create a genuine

issue of fact to survive summary judgment.  *See L & M Enters. v. BEI Sensors & Sys. Co.*, 231

F.3d 1284, 1287 (10th Cir. 2000) (deeming conclusory allegations insufficient to create a genuine

issue of fact to defeat summary judgment).  Plaintiff's self-serving, speculative, and conclusory

statements simply cannot bridge the gap between the level of evidence he has presented by way of

collateral estoppel and the level of evidence needed to survive summary judgment.  Otherwise

put, because of the nature of Plaintiff's proffer, the court is left only with those conclusions from

the CSA Proceedings that were given preclusive effect.  As discussed above, said conclusions are

insufficient to satisfy Plaintiff's burden to demonstrate a *prima facie* case that he was disabled.

Accordingly, to the extent Plaintiff bases his ADA claim on being regarded as disabled, it must fail. Defendant is entitled to summary judgment thereupon.

### (2)    Recorded as Disabled

In an alternative approach, Plaintiff points to his October 14, 1999 medical evaluation and argues that he was recorded as disabled. (Pl.'s Br. at 14–15.) Plaintiff underscores that on the evaluation form, his examining physician imposed a number of physical restrictions and marked checkboxes next to same indicating that the restrictions were permanent.[3] (Defs.' Br., Ex. E [Return to Work Pass].) Plaintiff then argues that summary judgment is not appropriate on this aspect of his claim, because whether an individual's impairments substantially limit a major life activity must be made on a case-by-case basis. (Pl.'s Resp. at 14–15.) As Plaintiff wholly ignores his burden in making his arguments as to this aspect of his case, the court disagrees.

"'To have a record of [a disabling] impairment, a plaintiff must have a history of, or been misclassified as having, an impairment that substantially limited a major life activity.'" *Doebele*, 342 F.3d at 1132 (quoting *Sorensen v. Univ. of Utah Hosp.*, 194 F.3d 1084, 1087 [10th Cir. 1999]). The record-of-impairment standard is satisfied only if the impairment of record would substantially limit one or more of the plaintiff's major life activities. *Id.* Plaintiff does not bother to argue that the purported impairments resulting from the recorded physical restrictions would

---

[3]  While this may be true, the form also evidences the physician's opinion that: (1) Plaintiff could return to work the same day, subject to the restrictions; (2) Plaintiff's restrictions on running and climbing stairs "may be permanent;" and (3) based on results from tests performed by Plaintiff's personal physician, the restrictions might change. (Defs.' Br., Ex. E [Return to Work Pass].)

substantially limit his major life activities or to clarify what his affected life activities might be. (*See* Pl.'s Resp. 14–15.)  The court declines the opportunity to make Plaintiff's arguments for him.  In the absence of any allegation that the recorded physical restrictions would actually limit Plaintiff's substantial life activities — permanently or otherwise — or any clarification as to which of his substantial life activities would be affected, the court cannot find that Plaintiff has established a *prima facie* case that he was recorded as disabled.  Accordingly, the court need not address the remaining *McDonnell Douglas* factors.  Defendant is entitled to summary judgment on Plaintiff's ADA claims.

### 3. Conclusion

Based on the foregoing, it is ORDERED that:

1.  Plaintiff's motion for partial summary judgment (#55) is DENIED.

2.  Defendants' motion for summary judgment (#57) is GRANTED.

3.  The clerk shall forthwith enter judgment in favor of Defendants and against

Plaintiff, dismissing Plaintiff's claims with prejudice.  Defendants may have their costs by filing a bill of costs within eleven days of the date of this order.

Dated this 3rd day of May, 2007

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge